472 A.2d 510

**MARRIOTT CORPORATION**

**v.**

**VILLAGE REALTY & INVESTMENT CORPORATION, et al.**

**No. 1079, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 13, 1984.

Certiorari Denied July 13, 1984.

**146**

Burton A. Schwalb, Washington, D.C., with whom were Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., Francis E. Yeatman and Bradshaw, Thomas & Yeatman, Silver Springs, on the brief, for appellant.

John R. Young, West Palm Beach, Fla., with whom were Hamilton, James, Merkle & Young, West Palm Beach, Fla.,

Janet S. Zigler and Brault, Graham, Scott & Brault, Washington, D.C., on the brief, for appellees.

Argued before WILNER, GARRITY and ALPERT, JJ.

WILNER, Judge.

Marriott Corporation (Marriott), which is headquartered in Maryland, purchased a tract of land in Orlando, Florida (the Barley tract), knowing that one or more Florida real estate brokers intended to claim a commission or finder's fee on the transaction. Marriott did not believe that it was liable for any such commission or fee, but if there was to be a fight about the matter, Marriott desired to have the bout scheduled in a Maryland arena.

No doubt anticipating, but without waiting for, an action by the Florida brokers, Marriott sought defensively to litigate the issue here through a declaratory judgment proceeding filed in the Circuit Court for Montgomery County.

The Declaration named as defendants four Florida residents: Village Realty & Investment Corporation (Village), Fred J. Eisler (Eisler), Earl A. Hollis, Inc. (Hollis), and Dean Chapman (Chapman). It alleged that: (1) Marriott contracted to purchase the Barley tract on September 17, 1982, and closed the transaction December 10, 1982; (2) the defendants claim a commission from Marriott on that transaction, but it is not certain "which [of them] will institute suit, whether they will do so together, and when or where they will do so"; and (3) Marriott "is entitled to a resolution of such claims with respect to all interested parties in order to avoid the lingering threat and the risk of conflicting claims." As relief, Marriott asked for a declaratory judgment that it did not agree to pay a commission to any of the defendants and that it is not "otherwise liable" to the defendants for any commission.

The four defendants responded with a motion raising preliminary objection based on lack of *in personam* jurisdiction. The court granted that motion and dismissed Marriott's Declaration. This appeal is from that action.

It is undisputed that none of the Florida defendants maintains an office in Maryland, employs agents in Maryland, or regularly engages in business here. The sole nexus of any of them with this State and the sole basis of jurisdiction posited by Marriott is this:

(1) Eisler is an agent for Village.

(2) Chapman is an agent for Hollis.

(3) Village and Hollis were "cobrokers" with respect to the Barley tract.

(4) In April, 1982, William Gilbert, a Marriott official, was in Florida negotiating the purchase of land in West Palm Beach. While there, he happened to meet Eisler and casually mentioned to him Marriott's interest in purchasing land in the Orlando area. After a telephone conversation with Chapman, Eisler suggested to Gilbert the Barley tract, with which Gilbert was already familiar. On April 14, Eisler called Gilbert and offered to bring him some additional information regarding the Barley tract; Gilbert suggested that Eisler simply mail the material—that personal delivery was unnecessary. Nonetheless, on April 20, Eisler came to Gilbert's office in Maryland and gave to Gilbert an aerial photograph and a proposed land use plan for the Barley tract.

(5) At that meeting, *which was the only contact that any of the defendants had in Maryland,* Eisler informed Gilbert that if Marriott purchased the tract, Eisler would look to Marriott for a commission, to which Gilbert responded that Marriott would not pay any such commission.

Upon this slender reed, Marriott asserts Maryland jurisdiction over the Florida defendants through what the defendants characterize as a "bad marriage" between the Maryland "long arm" statute (Md.Code Ann.Cts. & Jud.Pr. art., § 6–103) and the State Declaratory Judgment Act (Cts. & Jud.Pr. art., §§ 3–401—3–415).

It is important to note at the outset, and to keep firmly in mind throughout, that the issue before us in this appeal is not whether Marriott would ultimately be entitled to a

declaratory judgment, *i.e.,* whether if all parties were properly before the court, it would be appropriate for the court to declare their respective rights through the entry of a declaratory judgment. The question is strictly one of whether a Maryland court has *in personam* jurisdiction over the four Florida defendants.

■ As a preface to the consideration of that question, we note first that the Declaratory Judgment Act does not purport, and is not effective of itself, to confer *in personam* jurisdiction over nonresident parties. To the extent that it permits the adjudication of disputes prior to an actual transgression of a party's rights or status, the Act may perhaps be regarded as extending the subject matter jurisdiction of the circuit courts; but it does not serve to extend the court's reach over persons who are not otherwise properly subject to its authority.

Marriott concedes that jurisdiction over the defendants in this case arises, if at all, from the "long arm" statute—§ 6–103—and the due process constraints that underlie it. There is no other basis of *in personam* jurisdiction. The initial focus, then, is on that statute. As the Court of Appeals pointed out in *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976):

> "Application of the long arm statute is a two-step process. First, it must be determined whether the statute purports to authorize the assertion of personal jurisdiction. And secondly, it must be determined whether an exercise of jurisdiction permitted by the statute violates the Due Process Clause of the Fourteenth Amendment."

*See also Mohamed v. Michael,* 279 Md. 653, 370 A.2d 551 (1977).

Section 6–103(a) provides that "[i]f jurisdiction over a person is based solely upon this section," which in this case it is, "he may be sued *only on a cause of action arising from any act enumerated in this section.*" (Emphasis supplied.)

Subsection (b) then lists six types of acts or activity from which Maryland jurisdiction may arise. It provides, in relevant part, that "[a] court may exercise personal jurisdiction over a person who, directly or by an agent . . . (1) Transacts any business or performs any character of work or service in the State." [1] Marriott contends that the "negotiations" conducted between Eisler and Gilbert in Maryland on April 20, 1982, suffice to constitute the transaction of business or performance of work or service in this State under § 6–103(b)(1).

The defendants' initial response to this argument is that by virtue of the emphasized language in § 6–103(a), *ante,* § 6–103(b) has no application to the case and can therefore afford no basis of jurisdiction. Section 6–103(a) permits jurisdiction "only on a cause of action arising from" an act enumerated in subsection (b); and upon this record, they say, Marriott has no cause of action arising from anything that transpired between Eisler and Gilbert. If there is a cause of action, they argue, it is theirs, not Marriott's.

That argument, we think, overlooks the proper function of the Declaratory Judgment Act, and is a bit too simplistic. The purpose of that Act, as stated in § 3–402, is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations," and to that end § 3–403(a) permits a circuit court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." As pointed out in *Davis v. State,* 183 Md. 385, 388, 37 A.2d 880 (1944), the primary purpose of the Act "is to relieve litigants of the rule of the common law that no declaration of rights may be judicially adjudged unless a right has been violated, and to render practical help in ending controversies which have not

---

1. In its brief, Marriott argues jurisdiction also under § 6–103(b)(2)—the supply of services in Maryland. That question was not raised below, however, and we shall therefore not consider it in this appeal. Md.Rule 1085.

reached the stage where other legal relief is immediately available."

█ If the other jurisdictional prerequisites are met, a declaratory judgment proceeding may be brought defensively in anticipation of other litigation. Section 3–409(a) makes that clear when, with an exception not relevant here, it permits the granting of a declaratory judgment

"if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties *which indicate imminent and inevitable litigation;* or

(3) A party asserts a legal relation, status, right, or privilege *and this is challenged or denied by an adversary party,* who also has or asserts a concrete interest in it." (Emphasis supplied.)

█ The fact that Eisler's activity in Maryland would give Marriott no cause of action for damages or for traditional equitable relief does not, therefore, end the inquiry under § 6–103. If, as alleged, and indeed as ultimately became manifest through actions instituted against Marriott in Florida,[2] "imminent and inevitable litigation" was indicated as the result of "a legal relation, status, right, or privilege" asserted by one party and "challenged or denied" by the other, Marriott would have a cause of action cognizable under the Declaratory Judgment Act "to settle and afford relief from uncertainty and insecurity with respect to" the controversy. It matters not, for purposes of § 6–103, that, after considering all of the relevant circumstances, the court would ultimately decline to enter a declar-

---

**2.** We are apprised by *appellees* that in July, 1983, *after* Marriott's Declaration was dismissed by the circuit court here, they (Village and Hollis) sued Marriott in the Florida State courts for commissions on the sale of the Barley tract. On Marriott's petition the case was removed to the U.S. District Court for the Southern District of Florida.

atory judgment.[3] Insofar as § 6–103 is concerned, the relevant inquiry is whether the court has authority to entertain the action in the first instance, not what its ultimate decision might be.[4]

If the controversy alleged by Marriott is one that could legally be considered in a declaratory judgment proceeding, as we think it is, the condition of § 6–103(a) is satisfied, and the inquiry must focus on § 6–103(b)(1). The issue remains, then, whether, by reason of Eisler's limited contact with Gilbert in Florida and his single appearance in Maryland on April 20, 1982, the defendants may be regarded as having subjected themselves to jurisdiction here under § 6–103(b)(1). We think not, and for *that* reason we shall affirm the judgment below.

The basic principles governing extra-territorial *in personam* jurisdiction are fairly clear. They have been restated

---

**3.** We recognize, of course, that the Declaratory Judgment Act confers a *discretionary* authority. The court is not required to enter a declaratory judgment in every case in which one might be authorized. *See Baltimore v. Seabolt,* 210 Md. 199, 123 A.2d 207 (1956); *A.S. Abell Co. v. Sweeney,* 274 Md. 715, 337 A.2d 77 (1975). Indeed, where the matter in dispute can better be litigated in a different forum, a declaratory judgment, though jurisdictionally permissible, may nevertheless be inappropriate. *See Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975); *Grimm v. County Comm'rs,* 252 Md. 626, 250 A.2d 866 (1969); *also Ewing v. Trenton,* 137 N.J.Eq. 109, 43 A.2d 813 (1945). But the fact that in a particular setting the court may properly decline to enter a declaratory judgment (or for that matter must, in the proper exercise of its discretion, do so) does not mean, for the jurisdictional purposes of § 6–103, that a cause of action under the Declaratory Judgment Act does not arise.

**4.** This view is consistent with the well-established principle that "seldom, if ever" should a court dismiss an action for declaratory judgment without a declaration, one way or the other, of the rights of the parties. *See Mauzy v. Hornbeck,* 285 Md. 84, 91–92, 400 A.2d 1091 (1979), and cases cited therein. Such action is appropriate only where it appears from the declaration itself that there is no justiciable controversy or that declaratory relief is legally unavailable or inappropriate. *See Hunt v. Montgomery County,* 248 Md. 403, 237 A.2d 35 (1968); *Woodland Beach Ass'n v. Worley,* 253 Md. 442, 252 A.2d 827 (1969); *Shanks v. Williams,* 53 Md.App. 670, 673, 455 A.2d 450 (1983).

most recently by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and by the Court of Appeals in *Mohamed v. Michael, supra,* 279 Md. 653, 370 A.2d 551, and *Krashes v. White,* 275 Md. 549, 341 A.2d 798 (1975). We may, for purposes of this case, summarize them as follows:

■ (1) Section 6–103 was intended to expand the *in personam* jurisdiction of the Maryland courts to the full extent permitted by the Fourteenth Amendment.

■ (2) The general standard under the Fourteenth Amendment is that set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945):

> "Due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

This is essentially a test of reasonableness and fairness: Is it reasonable to require the defendant to defend the action in the forum State?

(3) In weighing the reasonableness of the assertion of jurisdiction by the forum State, the burden on the defendant

> "while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute . . . ; the plaintiff's interest in obtaining convenient and effective relief . . . at least when that interest is not adequately protected by the plaintiff's power to choose the forum . . . ; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies. . . . " (Citations omitted.)

*World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at 292, 100 S.Ct. at 564.

(4) In applying these factors and in judging reasonableness generally, "it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Mohamed v. Michael, supra,* 279 Md. at 658, 370 A.2d 551.

A useful composite of these principles was set forth in *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968), and adopted in *McLaughlin v. Copeland,* 435 F.Supp. 513 (D.Md.1977). Based on *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla, supra,* 357 U.S. 235, 78 S.Ct. 1228, the Sixth Circuit Court discerned three criteria for determining the outer limits of *in personam* jurisdiction based on a single act within the forum State:

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

Whether we view Marriott's declaration against these criteria, or in terms of the principles summarized in *World-Wide Volkswagen,* the lack of Maryland jurisdiction becomes clear.

Nowhere in the Declaration or in Gilbert's affidavit filed in support of Marriott's response to the defendants' motion is there any assertion that Eisler was authorized to act, or indeed that he purported to act, on behalf of Hollis or Chapman. The only averments regarding those defendants were that Eisler, in Florida, (1) called them for information concerning the Barley tract and (2) represented that they "were realtors with respect to that tract." From the record

before us, it does not appear that either Chapman or Hollis had any contact with the State of Maryland or, for that matter, with Gilbert. It is clear, then, that neither of those defendants purposefully availed himself or itself of the privilege of acting in Maryland or of causing a consequence here. Exercise of Maryland's jurisdiction over them would be most unreasonable.

Eisler, on behalf of himself and Village, did make the one trip here, but that was only to deliver two pieces of information regarding the property, information, as Marriott points out, that could as easily have been mailed. It does not appear from the record before us that any negotiations took place at that meeting with regard to the Barley tract. Although Eisler's contact with Gilbert in Maryland was no doubt one link in a chain of events leading to the claim for commissions, the claim itself arose from Marriott's purchase of the Florida property, a purchase that it negotiated directly with the owners of the land.

Eisler's trip to Maryland was, of course, a deliberate act intended to foster Marriott's interest in the Barley tract, and, in a broad sense, he may therefore be regarded as having purposefully availed himself of the privilege of acting in Maryland. But the activity here was itself so limited in terms of the ultimate controversy that arose that it cannot legitimately be said to constitute "a substantial enough connection" with this State as to make the exercise of jurisdiction here reasonable. We are aware of no case in which jurisdiction has been found to rest on such a thin base.

*Compare Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 215 A.2d 812, *cert. denied* 385 U.S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68 (1966), where the jurisdiction of a New York court to enforce a separation agreement against a Maryland resident was based on the fact that the agreement was negotiated, executed, and intended to be implemented in New York; *also Novack v. Nat'l Hot Rod Ass'n,* 247 Md. 350, 231 A.2d 22 (1967), where jurisdiction over a foreign association was based on the fact that its agents inspected and

approved a race track in Maryland and that it formally sanctioned races conducted here and permitted the promoters to advertise that fact; *also Harris v. Arlen Properties,* 256 Md. 185, 260 A.2d 22 (1969), where certain nonresidents were held answerable in a suit for brokers' commissions here based on their numerous inspections of the Maryland property, filing for a building permit, negotiating with a local utility company, arranging for the installation of storm drains, and generally acquiring information about the property, but another nonresident was not held answerable here based on a single trip to Maryland to inspect other property; *also Mohamed v. Michael, supra,* 279 Md. 653, 370 A.2d 551, where a nonresident's participation in "numerous telephone conversations and meetings conducted in the State of Maryland" designed to coerce the plaintiff into a certain course of action sufficed to constitute the transaction of business here; *see also Groom v. Margulies,* 257 Md. 691, 265 A.2d 249 (1970); *Vitro Electronics v. Milgray,* 255 Md. 498, 258 A.2d 749 (1969), *subsequent appeal dismissed,* 260 Md. 382, 272 A.2d 29 (1971); *Lamprecht v. Piper Aircraft Corp.,* 262 Md. 126, 277 A.2d 272 (1971); *Springle v. Cottrell Eng'r Corp.,* 40 Md.App. 267, 391 A.2d 456 (1978).

For these reasons, we conclude that the court was correct in dismissing the Declaration.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.