701 A.2d 873

JOHN L. McGANN

v.

JAMES C. WILSON, et al.

No. 1439, Sept. Term, 1996..

Court of Special Appeals of Maryland.

Oct. 30, 1997.

596

Terrance J. McGann (Dugan & McGann, P.A., on the brief), College Park, for Appellant.

Susan Vogel Saladoff (Saladoff & Holtz, P.C., on the brief), Chevy Chase, for Appellees.

Argued before EYLER and THIEME, JJ., and JAMES S. GETTY, J. (Retired, Specially Assigned).

JAMES S. GETTY, Judge, Retired Specially Assigned.

This is an appeal by John L. McGann, appellant herein, a Virginia lawyer who claims he was not subject to a lawsuit in the Circuit Court for Prince George's County, Maryland, because the Maryland court lacked personal jurisdiction over him.

Both appellant herein and his co-counsel, a Maryland lawyer, became impaled on their own petards as a result of requesting that the trial judge, at the conclusion of a civil jury trial in Fairfax County, Virginia, allow the jury to disclose what its verdict would have been had the case not been settled

minutes before the jury returned its verdict. Counsel settled the case for $200,000; the jury verdict would have been $750,000. Once those disparate figures hit the proverbial fan, the battle began in earnest. We explain.

James C. Wilson and Judy Wilson, his wife, appellees herein, are residents of Prince George's County, Maryland. On September 3, 1987, Mr. Wilson sustained serious injuries when he fell on a loading dock that collapsed while he was delivering packages for United Parcel Services to Hodges Gallery in Fairfax County, Virginia. Mrs. Wilson, at that time, was employed as a legal secretary for the law firm of Fishman and Jaklitsch, located in Prince George's County. Mr. Wilson retained Richard Jaklitsch to pursue a third party claim against Hodges Gallery for negligence in failing to maintain the loading dock in a safe condition.

The statute of limitations for personal injury claims was about to expire in Virginia, prompting Jaklitsch to retain appellant as local counsel in Virginia. Prior to retaining appellant, Jaklitsch had never met or dealt with him in any capacity. Jaklitsch forwarded his pleadings to appellant for revision and filing in Fairfax County, Virginia. Throughout the preparation and trial of the case, appellant never came to Maryland, and did all his preparation in Virginia. Jaklitsch remained as principal counsel. He testified as follows:

> I'm always the man on the case. The Wilsons were my clients. In addition to my clients, they were my very close friends.... I was always the guy running the case. I was lead counsel at the trial. I did ninety percent of the trial.

At the time of trial against Hodges Gallery, there existed a Virginia Workers' Compensation claim amounting to approximately $129,000 for medical and wage benefits that appellees had received. Jaklitsch's pretrial efforts to negotiate a reduction of the compensation lien with the attorney for the compensation carrier were unsuccessful. On the final day of trial, immediately before the jury was poised to return its verdict, Wilson agreed to a settlement of his claim against Hodges

Gallery for $200,000, payable $150,000 in cash and an annuity of $50,000, to be paid over ten years.

The terms of the settlement were put on the record by the trial judge, including Wilson's admission that he would accept the terms and conditions of the settlement. Immediately after the terms of the settlement were placed on the record, the parties agreed to hear the amount the jury would have awarded. The court permitted the jury foreman to announce that its verdict would have been in favor of Wilson for $750,000.

After settlement, a post-trial hearing was held before the trial judge on the worker's compensation lien. At that hearing, attended by Wilson, Jaklitsch and appellant McGann, Jaklitsch presented to the court his retainer agreement with Wilson for fifty percent of the amount of the recovery in the tort case. The trial judge then reduced the amount of the compensation lien by fifty percent. Whether the 50% fee induced the 50% compensation reduction is unclear.

After appellant received the settlement check, but before the hearing on the compensation lien was held, appellant McGann made his only trip to Maryland, for the express purpose of obtaining the signatures of Wilson and Jaklitsch on the check. This meeting took place at Jaklitsch's office in Prince George's County. Appellant deposited the check in his escrow account in Virginia. The date of appellant's visit to Jaklitsch's office was in the latter part of December 1991. Appellant disbursed the money from the settlement in accordance with the written fifty percent retainer agreement executed by Jaklitsch and Wilson.

In terms of dollars, the distribution of the settlement funds was as follows: the workers' compensation lien, as reduced by the trial judge, amounted to $55,000, which was returned to the workers' compensation insurer. A $50,000 annuity was purchased for Wilson in accordance with the settlement, leaving a balance of $95,000. McGann kept $47,500 and forwarded

$47,500 to Jaklitsch in accordance with their fee agreement.[1] Thereafter, appellees claimed that they were owed more money due to an alleged side agreement between Jaklitsch's firm and Wilson reducing the contingent fee from $50% to 25%. Appellant refused to believe Jaklitsch's assertion of the 25% fee arrangement which, appellant asserts, is a contradiction of the 50% fee arrangement asserted by Jaklitsch at the court hearing in Virginia relating to the lien of the workers' compensation commission.

Unable to secure additional money from their counsel, appellees filed suit in Prince George's County against appellant and Jaklitsch, alleging legal malpractice and breach of contract. With respect to the malpractice charges, appellees charged that Jaklitsch and appellant used undue influence and exerted pressure upon them to coerce their acceptance of the settlement offer.

These issues were tried in Prince George's County before Judge Joseph Casula and a jury. Before the case was submitted to the jury, appellees conceded that no contract existed between appellees and appellant, who did not meet them prior to trial. Accordingly, breach of contract and negligent misrepresentation charges against appellant were dismissed.

The jury found that Jaklitsch breached his contract[2] with appellees and they were awarded $21,984.83 from Jaklitsch, representing the difference between the 50% fee charged by appellant and the 25% fee agreed to by the Wilsons and Jaklitsch.

Richard Jaklitsch and appellant McGann were found to have engaged in negligent conduct, including using undue pressure exhorting the Wilsons to settle their case against Hodges Gallery in Virginia. The jury awarded $130,000 to appellees

---

1. Fifty percent of $200,000 generated a fee of $100,000. Both counsel took $2,500 less and remitted $5,000 to appellee, due to their success in having the court reduce the compensation claim by 50%.

2. The breach of contract action was against the firm of Fishman and Jaklitsch only, because the Wilsons had no contract with appellant.

with joint and severable liability against Jaklitsch and appellant. After appeals by both defendants, Jaklitsch reached a settlement with appellees. The breach of contract claim was settled for $24,549.73, and the malpractice claim was settled for $105,450.27.

The case *sub judice* is confined to John L. McGann's assertion that the Circuit Court for Prince George's County lacked personal jurisdiction over him and should have granted his repeated motions for dismissal of the legal malpractice action.

The Maryland long-arm statute is codified in Sec. 6–103 of the Courts and Judicial Proceedings Article of the Annotated Code. Pertinent to this case are sections (b)(1) and (b)(4), which provide as follows: [3]

**(b) In general.**—A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

. . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

### Discussion

■ The purpose of the Maryland long-arm statute was to extend the scope of jurisdiction over nonresident defendants to the limits of the Fourteenth Amendment's Due Process Clause as declared by the United States Supreme Court. *Curtis v.*

---

3. Appellees contend that section (b)(2) is also applicable herein. We disagree. Section (b)(2) permits a court to exercise personal jurisdiction over a person who "contracts to supply goods, food, services, or manufactured products used or consumed in the State." Appellant had no contract with appellees.

*State,* 284 Md. 132, 395 A.2d 464 (1978); *Potomac Design, Inc. v. Eurocal Trading, Inc.,* 839 F.Supp. 364 (D.Md.1993). The reach of the statute, therefore, depends largely upon whether Maryland in personam jurisdiction may be asserted under the Fourteenth Amendment. *Leather Masters, Ltd. v. Giampier, Ltd.,* 836 F.Supp. 328 (D.Md.1993).

■ Regarding issues of due process with respect to the long-arm statute, federal law is controlling. *Snyder v. Hampton Indus., Inc.,* 521 F.Supp. 130 (D.Md.1981), *aff'd,* 758 F.2d 649 (4th Cir.1985); *Craig v. General Fin. Corp.,* 504 F.Supp. 1033 (D.Md.1980); *United Merchants and Mfrs., Inc. v. David and Dash, Inc.,* 439 F.Supp. 1078 (D.Md.1977).

■ When a Maryland court determines whether it may exercise personal jurisdiction over a nonresident defendant, it must engage in a two-prong analysis. First it must determine whether jurisdiction is established under Maryland's long-arm statute and, if so, then it must determine whether the exercise of jurisdiction comports with the Fourteenth Amendment Due Process Clause. *Bahn v. Chicago Motor Club Ins. Co.,* 98 Md.App. 559, 634 A.2d 63 (1993).

■ In every case, it is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thereby invoking the benefit and protection of the laws of the forum state. *Harris v. Arlen Properties, Inc.,* 256 Md. 185, 260 A.2d 22 (1969). The unilateral activities of those claiming some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. *Geelhoed v. Jensen,* 277 Md. 220, 352 A.2d 818 (1976).

■ General jurisdiction exists where a defendant maintains continuous and systematic contacts with the forum, which constitute doing business in the forum. *See Talegen v. Signet,* 104 Md.App. 663, 671, 657 A.2d 406, *cert. denied,* 340 Md. 215, 665 A.2d 1058 (1995), quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984).

■ Specific jurisdiction involves an expanded inquiry into the precise nature of the defendant's contacts with the forum and whether the nature and extent of those contacts satisfy the threshold demands of fairness. *See Camelback Ski Corp. v. Behning*, 312 Md. 330, 539 A.2d 1107, *cert. denied*, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988).

Summarizing, general jurisdiction exists when a party has been doing business generally in the forum state, but the cause of action is not related to those contacts. Specific jurisdiction exists where the cause of action arose out of a party's contacts with the forum state. *See Jason Pharmaceuticals, Inc. v. Jianas Bros. Packaging Co., Inc.*, 94 Md.App. 425, 430, 617 A.2d 1125 (1993).

■ Appellees cite the above case, which was a specific jurisdiction scenario, as applicable herein. We disagree. In *Jackson*, we held that specific jurisdiction was established where an out-of-state appellant initiated negotiations for purchasing machinery by calling a Maryland corporation, entered into a $700,000 contract with the Maryland corporation in Maryland, and forwarded a $35,000 down payment into Maryland for machinery. That case is clearly distinguishable from the case before us. Appellant's single foray into Maryland was for the express purpose of having appellees endorse the settlement check received after the case was concluded in Virginia. That single visit is relevant to the jurisdiction issue, but not sufficient to establish jurisdiction over appellant.

Appellees also allege that appellant is subject to general jurisdiction in Maryland under sec. 6–103(b)(1) of the long-arm statute, which relates to "transacting business" in Maryland. Appellees cite in support of their argument the fact that their counsel forwarded to appellant "many other cases" during the two years of their relationship. Jaklitsch asserted that "my partner worked with Jack (McGann) as to what the fee split was." [4]

---

4. The only fee set forth in the record is the fee split between counsel for the appellees in the case *sub judice*.

Were we to assume that some unstated number of cases were forwarded by Jaklitsch to McGann, nothing in the record establishes what the cases involved, where the litigants lived, what involvement McGann had in Maryland with the parties, or what business was transacted in Maryland or for Maryland residents as a result of the cases forwarded. In short, the bald allegation of forwarding other cases falls woefully short of proving that appellant was transacting business in Maryland, or that he was acting on behalf of Maryland residents.

## Summary

It is undisputed in the case before us that appellant was a Virginia lawyer who at all times resided in and practiced law in the State of Virginia. He acted as local counsel in Virginia for a Maryland resident who, through his Maryland counsel, engaged appellant to assist in the trial of a tort claim arising from injuries sustained in an accident that occurred in Virginia. Assuming there was a contract with the Maryland attorney, it was to perform services in Virginia, not in Maryland. Appellant did not enter into any contract with the Maryland resident and had never met nor communicated with the Maryland resident prior to the trial in Virginia. In the course of that trial, appellant is alleged to have committed legal malpractice by coercing the Maryland resident to accept a settlement of his claim prior to the return of the verdict by the jury that heard the case. The cause of action, therefore, arose in the State of Virginia. Appellant's sole contact within the State of Maryland consisted of his visit to the office of Maryland counsel, after the case in Virginia was concluded, for the express purpose of having Maryland counsel sign the settlement check, which appellant subsequently deposited in a Virginia bank and disbursed in accordance with the written retainer agreement between Maryland counsel and the claimant.

We are fully aware that the Maryland legislature, in enacting the long-arm statute, intended to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause of the Fourteenth Amendment to the United States

Constitution. *Geelhoed, supra.* We look, therefore, "to but not beyond the outermost limits permitted by the due process decisions of the Supreme Court."

The granddaddy case of long-arm jurisdiction is *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), stating:

> It has been generally recognized that the casual presence of the corporate agent or even his conduct of a single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there.

In *Marriott v. Village Realty & Investment Corporation*, 58 Md.App. 145, 472 A.2d 510 (1984), former Chief Judge Wilner stated for this Court that personal jurisdiction over a nonresident did not exist where the nonresident made telephone calls to Maryland and a single trip by the nonresident to Maryland to deliver an aerial photograph and a land use plan, plus a discussion of a commission if a tract of land was purchased later. The Court acknowledged that the nonresident's trip was a deliberate act to generate interest in the parcel of land, "But the activity here was itself so limited in terms of the ultimate controversy that arose that it cannot legitimately be said to constitute 'a substantial enough connection' with this State as to make the exercise of jurisdiction here reasonable." *Marriott*, 58 Md.App. at 156, 472 A.2d 510.

The Court of Appeals also found insufficient contacts to justify the assumption of personal jurisdiction in a controversy arising from a Maryland resident being injured while skiing at a Pennsylvania resort. In that case, a Maryland skier was injured while skiing at the Camelback Ski Resort in Pennsylvania. The skier brought suit in Maryland against Camelback, which was a Pennsylvania corporation, with no license to do business in Maryland, and with no Maryland agent. Camelback's regular contacts with Maryland consisted of toll free telephone numbers for Maryland residents' use in contacting the resort, and on one occasion the resort contacted travel agencies in the State to stimulate midweek business. The

Court concluded that Camelback's activity did not mount up to "purposeful availment" of the benefits or laws of Maryland that would satisfy the threshold test of minimum contacts mandated by the Fourteenth Amendment's Due Process Clause.

The Court (McAuliffe, J.) said:

> The plaintiffs here clearly have a significant interest in obtaining relief, but in this respect we note that the plaintiffs could have maintained this action in Pennsylvania without suffering unreasonable inconvenience. This State has an interest in providing a forum for its injured citizens, but we must also recognize the legitimate interests and expectations of Camelback, a resident corporation of Pennsylvania.

*Camelback Ski Corporation v. Behning,* 312 Md. 330, 342, 539 A.2d 1107, *cert. denied,* 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988).

### *Conclusion*

Clearly, no specific personal jurisdiction was established in this case. Appellant's single visit to Maryland to obtain signatures on the settlement checks did nothing to confer specific jurisdiction to adjudicate a claim, because no contract existed between appellees and appellant, and the acts complained of, negligence and malpractice, all preceded the single visit and trial in Fairfax County, Virginia.

We conclude that the facts of this case do not amount to doing business generally within the State sufficient to confer general jurisdiction over appellant in Maryland. Maryland has virtually no interest in a malpractice claim tried in Virginia under Virginia law. Appellant, furthermore, did not engage in any solicitation in this State, nor did he pursue any persistent course of conduct in Maryland that would indicate he was purposely availing himself of the benefits or laws of this State.

■ Were we to concede, for discussion purposes, that general jurisdiction may have existed, we would conclude that appellant's role in this case was such that he could not have

expected to be hauled into a Maryland court to answer a claim for malpractice concerning a settlement of a personal injury case where the injury, the trial, and the settlement occurred in Virginia. Subjecting appellant to standing trial in Maryland does not satisfy the threshold demands of fairness.

A fairness analysis involves the following relevant factors: the burden on the defendant; the interest of the forum state; the plaintiff's interest in obtaining relief; the interstate judicial interests in obtaining the most efficient resolution of the controversy; and the shared interest of the several states in furthering fundamental social policies. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Appellant was local counsel on behalf of appellees in Virginia. Every aspect of his participation in the trial, which concluded with a settlement of the claim, occurred in Virginia. Appellant could reasonably anticipate being sued in Virginia, but not in Maryland.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEES.