Nick GIANNARIS, et al.

v.

Anthony C.Y. CHENG, Sr., et al.

No. CIV.A. WMN–02–104.

United States District Court, D. Maryland.

May 30, 2002.

Barry L. Gogel, John M.G. Murphy, Ober Kaler Grimes and Shriver, Baltimore, MD, for Plaintiffs.

Walter A. Reister, III, Reiter and Reiter LLC, Annapolis, MD, Nicholas H. Hantzes, Hantzes and Associates, Vienna, VA, for Defendants.

## MEMORANDUM

NICKERSON, District Judge.

Before the court are motions to dismiss the Amended Complaint filed by Defendants Anthony C.Y. Cheng, Sr. and Anthony C.Y. Cheng, Jr. (Paper No. 11) and Defendant T.C. Corporation (Paper No. 12).[1] The motions have been fully briefed and are ripe for decision. Upon review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that both motions will be denied.

## I. BACKGROUND

This diversity action arises out of an alleged business deal between Plaintiffs Nick Giannaris and Constadino Giannaris (Nick's son) and Defendants Anthony C.Y. Cheng, Sr. and Anthony C.Y. Cheng, Jr. (hereinafter referred to as "Cheng Senior" and "Cheng Junior," respectively). The following facts are taken from the Amended Complaint, unless otherwise noted.

In late 1998 or early 1999, the Cheng Defendants approached Plaintiffs with a proposal that Plaintiffs invest "the sum of at least $100,000 in a business known, or to be known, as T.C. Corporation, Ltd. [T.C. Corp.], which [Cheng Defendants] purported to own." Amended Complaint at ¶ 8. The purpose of T.C. Corp. was to operate a restaurant in Nassau, Grand Bahama, known as "Tony Cheng's." Id. Defendants also proposed that Constadino Giannaris accept employment with T.C. Corp. and assist in setting up and operating the restaurant in the Bahamas. Id.

The Chengs and the Giannarises met on several occasions to discuss the business proposal, including at least one meeting at a restaurant in Maryland owned by the Giannarises (hereinafter referred to as "the Maryland meeting"). Id. at ¶ 9. Plaintiffs were interested in the proposal, but insisted that, should Constadino's employment cease "for any reason," their entire investment in the enterprise would be refunded to them. Id. At the Maryland meeting, the Chengs[2] orally agreed to this arrangement, and agreed that the promise to refund the investment would be put in writing. Id. at ¶ 10.

Subsequently, Constadino Giannaris traveled to the Bahamas to begin working for T.C. Corp. See, Constadino Giannaris Aff. at ¶ 6. Nick Giannaris remained in Maryland. Id. In the Bahamas, Constadino met with the Chengs or their agents, along with a Bahamian lawyer, to execute corporate documents. Amended Complaint at ¶ 10. T.C. Corp. was incorporated in the Commonwealth of the Bahamas. See, Anthony Cheng, Sr. Aff. at ¶ 2. Prior to the opening of the restaurant, Constadino Giannaris requested that Cheng Senior reduce to writing the promise to refund the Giannarises' investment if Constadino's employment were to end. Amended Complaint at ¶ 11. According to Constadino, a letter was written and signed by Anthony Cheng, Jr., who "stated that he could sign his father's name." Constadino Giannaris Aff. at ¶ 6. The letter, which was on T.C. Corp. letterhead and signed only as "Anthony Cheng," was addressed to Constadino Giannaris at a Maryland address.

1. Defendants had also filed motions to dismiss the original Complaint (Paper Nos. 4 and 5), but as Plaintiffs subsequently filed an Amended Complaint, those motions will be denied as moot.

2. Throughout the Amended Complaint, Plaintiffs refer to Cheng Senior and Junior collectively as "defendant stockholders," despite the fact that Plaintiffs never specifically allege that the Chengs own or owned stock in T.C. Corp. In an affidavit submitted by the Cheng Defendants, Cheng Senior states that he is the president of T.C. Corp., but does not discuss the ownership of the company.

Complaint at Exh. A. The body of the letter, dated March 29, 1999, reads in its entirety:

We wish to confirm your investment in the captioned business which is coupled with employment in the business.

We wish to reaffirm our shareholders agreement that in the event your services with the company should cease for whatever cause or reason, your total capital investment without interest or enhancement by way of goodwill or otherwise shall be refunded to you in its entirety.

Complaint at Exh. A.

The letter was faxed to Nick Giannaris in Maryland, who then, in reliance on the letter and other representations made by the Chengs, "gave at least $100,000" to the Chengs for investment in T.C. Corp. Amended Complaint at ¶ 11. Thereafter, Constadino worked at the restaurant until it went out of business in approximately September 2000. According to Plaintiffs, the hotel from which T.C. Corp. rented space evicted the business due to failure to pay rent or resolve "a misunderstanding regarding the rental terms." Amended Complaint at ¶ 12. At that point, Constadino's employment with T.C. Corp. ended, and on February 14, 2001, Nick Giannaris requested a refund of his investment. Id. at ¶ 13.

When no refund was received, Plaintiffs commenced this action against Cheng Senior, Cheng Junior, and T.C. Corp.[3] Plaintiffs' original complaint brought claims for breach of contract (Count I), fraudulent misrepresentation (Count II), and negligent misrepresentation (Count III). In their Amended Complaint, Plaintiffs made some changes to those three claims, and added a claim for unjust enrichment (Count IV). Defendants Cheng Senior and Cheng Junior have moved to dismiss all counts on the ground that each count fails to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Defendant T.C. Corp. has moved to dismiss all claims against it on the ground that this Court does not have personal jurisdiction over the corporation.

## II. APPLICABLE LEGAL STANDARDS

In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), a court may rely on the allegations in the complaint and affidavits submitted by the parties. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). When, as here, the district court decides the issue of personal jurisdiction without an evidentiary hearing, the plaintiff bears the burden of proving a prima facie case of personal jurisdiction. *Id.* The court, in deciding whether a plaintiff has met this burden, must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. *See, Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir.1997). "To survive a motion to

---

**3.** The Amended Complaint also names Johnny Tung as a Defendant, but Mr. Tung has not been served.

dismiss, Plaintiff[s] must have alleged facts that show that they are entitled to relief on their substantive causes of action." *In re Criimi Mae, Inc. Securities Litigation,* 94 F.Supp.2d 652, 656 (D.Md.2000).

## III. DISCUSSION

### 1. Personal Jurisdiction over T.C. Corp.

A federal court "has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir.1993). Maryland's long arm statute states that Maryland courts have personal jurisdiction over any defendant "who directly or by an agent ... transacts any business or performs any character of work or service in the State." Md.Code Ann. Cts. & Jud. Proc. § 6–103(b)(1). It has long been recognized that this provision of the statute provides jurisdiction to the full extent permitted by due process. *Id.; McGann v. Wilson,* 117 Md.App. 595, 701 A.2d 873 (1997).

For this Court to exercise personal jurisdiction over a defendant, due process requires that the defendant have at least "minimum contacts" with Maryland "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Physical presence within the forum state is not required to establish personal jurisdiction over a non-resident defendant. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Jurisdiction is also established if it can be shown that the defendant has purposefully directed its activities towards the residents of the forum state, *id.* at 472, 105 S.Ct. 2174, or otherwise "purposefully avail[ed]

itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

A court may exercise "specific jurisdiction" where the suit arises from a defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction exists when the "contacts related to the cause of action ... create a 'substantial connection' with the forum state...." *ESAB Group v. Centricut, Inc.,* 126 F.3d 617, 625 (4th Cir.1997), *cert. denied,* 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998) (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). The defendant's activities must be purposefully directed at the forum state "in more than a random, fortuitous, or attenuated way." *ESAB Group,* 126 F.3d at 625 (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (1985)). The Supreme Court has held that even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of "fair play and substantial justice" is observed. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. 2174.

In determining whether prior business negotiations in the forum state give rise to specific jurisdiction, the "strongest factor" is "whether the defendant initiated the business relationship in some way." *Nueva Eng'g, Inc. v. Accurate Electronics, Inc.,* 628 F.Supp. 953, 955 (D.Md.1986). Although T.C. Corp. argues in its pleadings that the Chengs traveled to Maryland purely for Plaintiffs' convenience, Plaintiffs have supported their case for personal jurisdiction with sworn testimony stating that it was the Chengs who initiated the business relationship and

came to Maryland seeking investment from Maryland residents. Constadino Giannaris Aff. at ¶¶ 1,2. Also, despite Plaintiffs' failure to specifically allege or prove that the Chengs were shareholders of T.C. Corp., there is more than enough evidence to indicate that the Chengs were acting as the corporation's agents. A court may exercise personal jurisdiction over a non-resident corporation based on the acts of its agents in Maryland. *See,* Md.Code Ann. Cts. & Jud. Proc. § 6–103(b); *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 61 (4th Cir.1993).

In sum, the factual allegations and testimony submitted by Plaintiffs establish a prima facie case that Defendants Cheng Senior and Cheng Junior acted as agents of T.C. Corp. and, as such, purposefully availed themselves of the privilege of conducting activities in Maryland. The Chengs, who are residents of Virginia, purposefully sought investment in the corporation from Nick Giannaris, a Maryland resident and owner of a Maryland restaurant, and sought to employ Constadino, also a Maryland resident, to work for the corporation. The Chengs visited Plaintiffs at their Maryland restaurant where they entered into negotiations and alleged oral agreements that are central to this lawsuit.

Finally, the Court finds little merit in Defendant T.C. Corp.'s argument that it would be unduly burdened as a foreign corporation forced to litigate in the United States.[4] Both Cheng Defendants, who are at least agents and possibly principals and owners of the corporation, are residents of Virginia. According to Plaintiffs, the Chengs also own and operate a restaurant in Maryland. *See,* Pls.' Opp. at 2 n. 2. T.C.

Corp., through its agents, conducted negotiations and allegedly entered agreements in Maryland, and benefitted from investment money it sought from Maryland residents. The fact that business records and/or witnesses may have to travel here from the Bahamas does not negate this Court's personal jurisdiction over T.C. Corp.

### 2. Breach of Contract Claim

▨ Plaintiffs' breach of contract claim alleges that Defendants breached the agreement, memorialized in the March 29, 1999 letter, that Plaintiffs would receive a refund of their investment should Constadino's employment with T.C. Corp. end for any reason. The Cheng Defendants contend that this Court should dismiss the claim because the agreement is so vague or indefinite that it does not constitute a contract. According to Defendants, the letter fails for three reasons: (1) it fails to identify the parties to the "shareholders agreement;" (2) it fails to identify a source of the refund; and (3) it is indefinite as to the terms or timing of the refund.

▨ If an agreement is so vague or indefinite that it is impossible to ascertain the full intention of the parties, it is void and unenforceable as a contract. *Quillen v. Kelley,* 216 Md. 396, 407, 140 A.2d 517 (Md.1958). The law disfavors the destruction of contracts due to uncertainty, however, and courts should, if possible, construe the contract "as to carry into effect the reasonable intention of the parties if that can be ascertained." *Id.See also, Robinson v. Gardiner,* 196 Md. 213, 76

---

4. T.C. Corp. relies heavily on *Asahi Metal Industry, Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), for the proposition that this Court should give "significant weight" to the "unique burdens" of requiring a foreign corporation to litigate in the United States. In that case, however, a Japanese company with headquarters in Japan had purposefully directed none of its business activities toward the forum state or its citizens.

A.2d 354 (1950) (explaining the requirement of contractual certainty).

The Court recognizes that the March 29, 1999 letter, and the oral agreement which it purports to reflect, is ambiguous as to some of its terms. For example, it is not apparent from the face of the letter whether it was signed by Cheng Junior or Senior, and whether either of those men signed the letter on behalf of T.C. Corp, or on their own behalf, or both. Nor is there a definite time frame given for the refund. In addition, the letter is addressed to Constadino Giannaris but was faxed to Nick Giannaris, who subsequently made his investment, according to the Amended Complaint. Therefore, the term "your investment" is somewhat ambiguous.

These ambiguities are not fatal to the contract, however. The letter, along with the factual allegations contained in the Amended Complaint, adequately conveys the parties' intent that if Constadino's employment with T.C. Corp should end for any reason, the investment made by either Constadino Giannaris, Nick Giannaris, or both, would be refunded in its entirety by either of the Chengs or by T.C. Corp.

■■■■ A contract's terms need not be perfectly clear to be valid and enforceable. It is well-established that "where a question as to the general intention of the parties concerning which the instrument is not decisive, proof of independent facts collateral to the instrument may be admitted." *Canaras v. Lift Truck Services, Inc.*, 272 Md. 337, 350, 322 A.2d 866 (1974) (*quoting Chesapeake Brewing Co. v. Goldberg*, 107 Md. 485, 488, 69 A. 37 (1908)). Evidence of the parties' prior negotiations and the circumstances under which the letter was signed and sent would aid the jury in interpreting a reasonable meaning of the ambiguous contract terms. Furthermore, a contract that does not specify the time of performance is not void as a matter of law; rather, it will be interpreted as intending performance in "a reasonable time." *Kiley v. First National Bank of Maryland*, 102 Md.App. 317, 335, 649 A.2d 1145 (1994) (*quoting* Richard A. Lord, 1 *Williston on Contracts* § 4:19 at 434 (4th ed.1990)). Accordingly, the Court finds that the contract is not void for vagueness, and Plaintiffs may proceed with their claim.

### 3. Fraud and Negligent Misrepresentation Claims

■■■■ Plaintiffs allege that during the Maryland meeting, the Chengs made several material misrepresentations to them, with the intent to induce Plaintiffs to invest in T.C. Corp, and that Plaintiffs relied on those statements in agreeing to the deal. Count II states a claim for fraudulent misrepresentation, and Count III for negligent misrepresentation. Defendants argue that both claims should be dismissed for failure to comply with Fed.R.Civ.P. 9(b).

■■■■ Allegations of fraud or misrepresentation must be pleaded "with particularity." Fed.R.Civ.P. 9(b). Under this rule, plaintiffs "must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D.Md.2000). A complaint that fails to include these specific allegations is subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(6). *See, Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir.1990). These heightened pleading standards are intended, *inter alia*, to protect defendants from reputational harms and to provide defendants with fair notice of the accusations against them. *See, Gollomp v. MNC Financial Inc.*, 756 F.Supp. 228, 232 (D.Md.1991).

■■■■ Plaintiffs' original complaint did not comply with Rule 9(b). Plaintiffs clearly failed to specify which Defendant

made which statements, and omitted factual allegations as to why the alleged statements were false. In their Amended Complaint, Plaintiffs have cured these defects by alleging that *both* Cheng Defendants made each of the alleged false statements, and by alleging facts which, if true at the time the statements were made, would cause each of the statements to have been false or misleading when made. *See,* Amended Complaint at ¶¶ 19, 20, 25, 28.[5] Although Plaintiffs' descriptions of the alleged false statements do not contain actual quotations or precise details, the Court finds that they adequately put Defendants on notice of which statements are the subject of dispute, and constitute more than conclusory or speculative allegations of fraud. *See, Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999) (explaining that "a court should hesitate to dismiss a complain under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts").

Defendants also argue that Plaintiffs' negligent misrepresentation claim should fail because it lacks an essential element of that tort: that the defendant owed a duty of care to the plaintiff when the alleged statements were made. *See, Martens Chevrolet v. Seney,* 292 Md. 328, 439 A.2d 534 (1982). The Cheng Defendants argue that they owed no duty of care to Plaintiffs when or if they made the alleged misrepresentations, and therefore, that no cause of action should lie. In support of their argument that no duty of care arises in arms-length business transactions, Defendants rely on *Waller v. Maryland National Bank,* 95 Md.App. 197, 620 A.2d 381 (1993), which has been vacated and whose facts are not relevant to the matter at hand. Defendants ignore Maryland case law establishing that a duty of care may arise in arms-length business transactions, particularly where the transaction at issue involves the formation of a long-term business relationship, *see Weisman v. Connors,* 312 Md. 428, 540 A.2d 783 (1988), or discussions about a company's operations and financial conditions. *See, Martens Chevrolet* at 338, 439 A.2d 534.

In this action, Plaintiffs assert that the Chengs owed them a duty to tell the truth in negotiations about the proposed investment and Constadino Giannaris's employment with T.C. Corp. The Court finds that, under the principles set forth in *Weisman* and *Martens Chevrolet,* there was the requisite "special relationship" or "intimate nexus" between the parties to create a duty of care on the part of the Cheng Defendants. *See, Weisman,* 312 Md. at 448, 540 A.2d 783.

### 4. Unjust Enrichment Claim

In their Amended Complaint, Plaintiffs added a claim of unjust enrichment as an alternative to their breach of contract claim. Although the Court has found that the agreement embodied in the March 29, 1999 letter could be found to constitute a valid contract between the parties, it would be premature to dismiss Plaintiff's unjust enrichment claim before such a finding were made. Were the instant dispute

---

**5.** The Court notes, however, that one of the alleged false statements in the Amended Complaint does *not* satisfy the requirements of Rule 9(b). Plaintiffs allege that both Cheng Defendants made false statements "otherwise with respect to the investment and the operation of the Business." Amended Complaint at ¶¶ 19(f), 25(f). This general, "catch-all" allegation fails to provide Defendants with any additional notice as to which statements are allegedly false. Therefore Plaintiffs' misrepresentation claims will be limited to the specific statements contained in ¶¶ 19(a)-(e) and 25(a)-(e) of the Amended Complaint.

found to be covered by a contract, dismissal of the unjust enrichment claim would be warranted. *See, FLF, Inc. v. World Publications, Inc.,* 999 F.Supp. 640, 642 (1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.").

## IV. CONCLUSION

For the foregoing reasons, the motions to dismiss filed by the Cheng Defendants and T.C. Corp. will be denied. A separate order will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this day of May, 2002, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion to Dismiss filed by Defendants Anthony C.Y. Cheng, Sr. and Anthony C.Y. Cheng, Jr. (Paper No. 4) is hereby DENIED AS MOOT;

2. That the Motion to Dismiss filed by T.C. Corporation (Paper No. 5) is hereby DENIED AS MOOT;

3. That the Motion to Dismiss the Amended Complaint filed by Defendants Anthony C.Y. Cheng, Sr. and Anthony C.Y. Cheng, Jr. (Paper No. 11) is hereby DENIED;

4. That the Motion to Dismiss the Amended Complaint filed by T.C. Corporation (Paper No. 12) is hereby DENIED; and

5. That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to all counsel of record.