**JOHANSSON CORPORATION, d/b/a Titan Custom Cabinet**

v.

**BOWNESS CONSTRUCTION CO.**

No. CIV. CCB–03–1750.

United States District Court,
D. Maryland.

Jan. 22, 2004.

---

Richard I. Chaifetz, Law Office of Richard Chaifetz, Columbia, MD, for Plaintiff.

Deborah L. Robinson, Robinson Woolson PA, Baltimore, MD, for Defendant.

## MEMORANDUM

BLAKE, District Judge.

The defendant, Bowness Construction Company, has moved to dismiss the complaint filed by the plaintiff, Johansson Corporation, for lack of personal jurisdiction. The issues in this motion have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the motion to dismiss will be denied, but the case will be transferred to the United States District Court for the Middle District of North Carolina.

## BACKGROUND

Johansson Corporation ("Johansson") is a Maryland corporation, with its principal place of business in Baltimore, Maryland. Johansson manufactures and installs custom displays and cabinets for homes and businesses. Bowness Construction Company ("Bowness") is a North Carolina corporation, with its principal place of business in Pinehurst, North Carolina. Bowness builds custom homes in North Carolina. The dispute in this case arises from a subcontract entered into by the parties.

On January 23, 2001, Bowness was selected to serve as the general contractor to build a custom home for Charles and Sherri Grantham on property that the couple owned in Moore County, North Carolina. Stagaard & Chao, A.I.A., a North Carolina firm, was the architect for the project. Charles Grantham previously had contacted Anders Johansson, the general manager of Johansson Corporation, about supplying the cabinets and paneling for the home. (Pl.'s Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 1–2.) The Granthams apparently had seen work by Johansson Corporation at a home show in North Carolina. (*Id.* at ¶ 3.) At Grantham's request, Anders Johansson traveled to North Carolina in late 2000 to meet with representatives from Stagaard & Chao to discuss the project. (*Id.*)

Although Bowness was aware that Stagaard & Chao already was considering several subcontractors for the cabinets and paneling work, Bowness also sought out various subcontractors for the job, not including Johansson. (Def.'s Mem. at Ex. 1, Bowness Aff., at ¶ 15–17.) Ultimately, the Granthams directed Bowness to negotiate a subcontract with Johansson to perform the cabinetry and paneling work. (*Id.* at ¶ 16; Pl.'s Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 4.) Johansson and Bowness entered into a subcontracting agreement on June 22, 2001, under which Johansson agreed to supply all of the cabinets and paneling for the Grantham home for a total sum of $265,890. (Def.'s Mem. at Ex. 1, Bowness Aff., at Ex. A.)

Johansson filed this action for breach of contract on June 13, 2003. Johansson alleges that it completed all of the work required under the subcontract in February 2003, but that Bowness has refused to pay the remaining balance due to Johansson under the subcontract. (Compl. at ¶ 4, 9.) Bowness responds that the work performed by Johansson was inferior and untimely, leading to delays and additional costs. (Def.'s Mem. at Ex. 1, Bowness Aff., at ¶ 20.) Johansson disputes this characterization, arguing that any delays and additional costs were caused by Bowness. (Pl.'s Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 9.) Johansson seeks $109,956.95 in damages, which it alleges is the balance due under the subcontract. (Compl. at ¶ 8–10.)

## ANALYSIS

Bowness has moved to dismiss the complaint for lack of personal jurisdiction. When a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the burden rests ultimately with the plaintiff to prove, by a preponderance of the evidence, grounds for jurisdiction. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396–97 (4th Cir. 2003). If the district court does not hold an evidentiary hearing, however, as in this case, then the plaintiff is required only to make a prima facie showing of personal jurisdiction. *See id.* at 396; *Estate of Bank v. Swiss Valley Farms Co.*, 286 F.Supp.2d 514, 516 (D.Md.2003). The court must resolve all factual disputes and make all reasonable inferences in favor of the plaintiff. *See Carefirst*, 334 F.3d at 396.

The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction. Specific jurisdiction may exist where the claim is related to or arises out of the defendant's contacts with the state. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Alternatively, a defendant may be subject to general jurisdiction in a suit entirely unrelated to the defendant's contacts with the forum state where the de-

fendant maintains "continuous and systematic" contact with the state. *Id.* at 414–415, 104 S.Ct. 1868 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). In the instant case, Johansson does not contend that Bowness's activities in Maryland are extensive enough to subject the company to general personal jurisdiction. Rather, Johansson asserts that specific personal jurisdiction applies, because its claim of breach of contract arises out of Bowness's contacts with Maryland.

■ A federal court may exercise personal jurisdiction over a non-resident defendant if (1) jurisdiction is authorized under the long-arm statute of the forum state, and (2) the assertion of jurisdiction comports with Fourteenth Amendment due process requirements. *See Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001). The Maryland Court of Appeals has held that Maryland's long-arm statute is co-extensive with the scope of jurisdiction permitted by the Fourteenth Amendment due process clause, and the statutory and constitutional inquiries therefore merge in this case. *See Carefirst*, 334 F.3d at 396–97. The Maryland long-arm statute, however, limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated" in the statute itself. Md.Code Ann., Cts. & Jud. Proc. § 6–103(b)(1). Thus, a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction." *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F.Supp.2d 649, 652 (D.Md.2001); *see also Joseph M. Coleman & Assoc., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118–

19, n. 2 (D.Md.1995). Johansson relies on a provision of Maryland's long-arm statute which confers personal jurisdiction over a corporation that "transacts any business" in the state. Md.Code Ann., Cts. & Jud. Proc. § 6–103(b)(1).[1]

■ To determine whether the exercise of specific jurisdiction comports with due process, the court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397 (internal quotation marks omitted). A defendant has purposely availed itself of the privilege of conducting activities in the forum state if the defendant has created a "substantial connection" to the forum. *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir.1993). Phrased another way, the exercise of specific jurisdiction is consistent with the requirements of due process if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Fourth Circuit has taken a restrictive view of the due process analysis of state long-arm statutes and has emphasized that a defendant's contacts with the forum state must be tantamount to physical presence in the state to satisfy due process. *See ESAB Group, Inc., v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997) ("The question, then, is whether

---

1. Johansson identified the applicable provision of the Maryland long-arm statute in its opposition memorandum, rather than in its complaint. (Pl.'s Opp. Mem. at 5–6.) Although it is preferable for a plaintiff to identify the relevant provision(s) of the long-arm statute in its complaint, this omission alone does not warrant dismissal if the plaintiff properly references the statute in a memorandum responding to a defendant's motion to dismiss.

a defendant's contacts with the forum state are so substantial that they amount to a surrogate for presence and thus render the exercise of sovereignty just, notwithstanding the lack of physical presence in the state."); *Harry and Jeanette Weinberg Found., Inc. v. ANB Inv. Mgt. and Trust Co.*, 966 F.Supp. 389, 391–92 (D.Md.1997).

■ The Supreme Court has made clear that an out-of-state party's contract with a party based in the forum state cannot "automatically establish sufficient minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Instead, the court must perform an individualized and pragmatic inquiry into the surrounding facts such as prior negotiations, the terms of the contract, the parties' actual course of dealing, and contemplated future consequences, in order to determine "whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479, 105 S.Ct. 2174; *see also Mun. Mortgage & Equity v. Southfork Apartments Ltd. P'ship*, 93 F.Supp.2d 622, 626 (D.Md.2000). Among the specific facts that courts have weighed are "where the parties contemplated that the work would be performed, where negotiations were conducted, and where payment was made." *Mun. Mortgage & Equity*, 93 F.Supp.2d at 626 (internal quotation omitted). One of the most important factors is "whether the defendant initiated the business relationship in some way." *See id.* at 626–27 (quoting *Nueva Eng'g, Inc. v. Accurate Elecs., Inc.*, 628 F.Supp. 953, 955 (D.Md. 1986)). Ultimately, the question is whether the contract had a "substantial connection" to the forum state. *Burger King*, 471 U.S. at 479, 105 S.Ct. 2174; *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir.2000).

It is undisputed that Bowness has never established a physical presence in the state of Maryland, or had any physical contacts with the state apart from the instant case. Bowness never has been qualified to do business in Maryland, employed any individuals or otherwise established a physical presence in Maryland, performed any services or work in Maryland, or owned any real or personal property in Maryland. (Def.'s Mem. at Ex. 1, Bowness Aff., at ¶ 5–12.) With the exception of its involvement with Johansson, Bowness never has employed any subcontractors in Maryland or transacted any business in Maryland. (*Id.* at ¶ 9.) Further, Bowness never has advertised its services in Maryland or otherwise solicited business in the state. (*Id.* at ¶ 4, 13.) Indeed, during its twenty-five year history Bowness never has built, bid on, or otherwise sought to work on a project outside of North Carolina. (*Id.* at ¶ 4.) That Bowness has no physical presence in Maryland, never has solicited business in the state, and has sought to confine its business to North Carolina are facts that counsel against the exercise of personal jurisdiction in this case. *See Ellicott Mach.*, 995 F.2d at 478 (affirming denial of jurisdiction, noting that the defendant had no physical presence in the state and had not solicited business in the state); *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1128 (4th Cir.1986) (reversing exercise of jurisdiction, noting that the defendant "appears to have done everything possible to confine its United States business to its home state...during this transaction").

In addition, no employees or agents of Bowness ever visited the state of Maryland in relation to the subcontract with Johansson. (Def.'s Mem. at Ex. 1, Bowness Aff., at ¶ 5, 18.) Johansson makes much of the fact that Charles Grantham personally traveled to Maryland on several occasions, reportedly coming "at Mr. Bowness's request." (Pl.'s Opp. Mem. at 8, 10; *see also id.* at Ex. 1, Johansson Aff., at ¶ 3, 5.) Assuming that Grantham qualifies as a

principal with Bowness as his agent, and that Grantham was acting in that capacity on his trips to Maryland, these facts do not provide a basis for attributing Grantham's contacts with Maryland to Bowness. Acts of an agent may be attributed to the principal for jurisdictional purposes. *See Giannaris v. Cheng,* 219 F.Supp.2d 687, 693 (D.Md.2002); Md.Code Ann., Cts. & Jud. Proc. § 6–103(b). On the other hand, there is no legal basis for attributing the acts of a principal to the agent for jurisdictional purposes. *Cf. Columbia Briargate Co. v. First Nat'l Bank in Dallas,* 713 F.2d 1052, 1060–61 (4th Cir.1983) (finding that the exercise of jurisdiction over a corporate agent must be based on the agent's personal contacts with the forum state, not the acts of the principal, the corporation); *see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

The factor of whether the defendant initiated the business relationship counsels against the exercise of jurisdiction in this case, because the relationship was initiated by the plaintiff's client, the Granthams, based on the plaintiff's solicitation of business in North Carolina. *Cf. Diamond Healthcare,* 229 F.3d at 451 (affirming denial of jurisdiction, noting that the plaintiff initiated the business relationship with the defendant); *Mun. Mortgage & Equity,* 93 F.Supp.2d at 627 (denying jurisdiction, noting that the plaintiff initiated the business relationship with the defendant). Other aspects of the "prior negotiations" that culminated in the subcontract between Johansson and Bowness provide only a weak connection to Maryland. *Mun. Mortgage Equity,* 93 F.Supp.2d at 626. The only face-to-face meetings between employees of Johansson and Bowness occurred in North Carolina. (Def.'s Mem. at Ex. 1, Bowness Aff., at ¶ 18; Pl.'s

Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 3–5.) Anders Johansson states that the subcontract was negotiated with him in Maryland (Pl.'s Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 4), apparently via mail or telephone contacts emanating from North Carolina, but final negotiations were held in-person in North Carolina. (Def.'s Mem. at Ex. 1, Bowness Aff., at ¶ 18.) Thus, North Carolina is the principal location "where negotiations were conducted." *Mun. Mortgage Equity,* 93 F.Supp.2d at 626. In any event, the negotiations that occurred via mail or telephone contacts from North Carolina into Maryland cannot provide sufficient minimum contacts for the exercise of personal jurisdiction. *Compare Ritz Camera Ctrs., Inc. v. Wentling Camera Shops, Inc.,* 982 F.Supp. 350, 353–54 (D.Md.1997) (denying jurisdiction based solely on negotiations conducted via mail and telephone to the forum state), *with Giannaris,* 219 F.Supp.2d at 692–93 (exercising jurisdiction where agents for the defendant corporation initiated the business transaction and made visits to the forum state to conduct negotiations).

The "terms of the contract" and the "parties' actual course of dealing" in this case provide the strongest connection to Maryland, because they suggest that Maryland is the jurisdiction "where the parties contemplated that the work would be performed." *Mun. Mortgage Equity,* 93 F.Supp.2d at 626. From the very beginning of the negotiations over the subcontract, representatives from Stagaard & Chao instructed Johansson that all components should be manufactured and assembled at Johansson's factory in Maryland. (Pl.'s Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 3.) The subcontract does not address this issue, but it does specify that 45 percent of the incremental payments due would be paid after pieces were delivered to or manufactured at Johansson's place of business. (Def.'s Mem. at Ex. 1, Bowness Aff., at Ex. A, at 7.) Johansson alleges that

approximately 85 percent of the company's hours spent on the project, representing at least two-thirds of the value of the subcontract, were spent in Maryland.[2] (Pl.'s Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 7–8.) That the vast majority of the work under the contract was performed in Maryland, and that the parties apparently contemplated this result, is the most significant factor weighing in favor of personal jurisdiction over Bowness in the state of Maryland. *Cf. Diamond Healthcare,* 229 F.3d at 451–52 (affirming denial of jurisdiction, noting that the bulk of the work under the parties' contract was to be performed outside of the forum state); *Ellicott Mach.,* 995 F.2d at 478 (affirming denial of jurisdiction, noting that the work required under the parties' contract was to be performed outside of the forum state); *Mun. Mortgage Equity,* 93 F.Supp.2d at 627 (denying jurisdiction, noting that the performance contemplated under the parties' contract was to occur outside of the forum state). Nonetheless, even the place of performance provides some link to North Carolina-the subcontract specified that 30 percent of the incremental payments would be paid after installation and assembly work performed at the job site in North Carolina, and this work accounted for 15 percent of Johansson's hours. (Def.'s Mem. at Ex. 1, Bowness Aff., at Ex. A, at 7; Pl.'s Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 7.)

Other aspects of the "terms of the contract" and the "parties' actual course of dealing" provide weak connections to both Maryland and North Carolina. *Mun. Mortgage Equity,* 93 F.Supp.2d at 626. Although the subcontract was signed by Anders Johansson in Maryland and he was the last party to execute it (Pl.'s Opp. Mem. at Ex. 1, Johansson Aff., at ¶ 4), it was signed by Alex Bowness in North Carolina and lists Moore County, North Carolina as its location (Def.'s Mem. at Ex. 1, Bowness Aff., at Ex. A, at 1). Maryland is the state "where payment was made" for most of the work under the subcontract, *Mun. Mortgage Equity,* 93 F.Supp.2d at 626, but the last payment from Bowness was wired to an account in Pennsylvania at Johansson's request (Def.'s Mem. at Ex. 1, Bowness Aff., at ¶ 22.). Bowness had reserved the right to inspect Johansson's work at the completion of each phase of the subcontract, which could have required representatives of Bowness to travel to Maryland. (*Id.* at Ex. A, at 4.) However, the parties' actual course of dealing shows that Bowness never exercised this right. (*Id.* at ¶ 18.)

Finally, the "contemplated future consequences" stemming from the subcontract suggest that Bowness did not contemplate any future links to Maryland. *Mun. Mortgage Equity,* 93 F.Supp.2d at 626. Under the subcontract, the parties agreed to a one-time business relationship for a relatively short duration of approximately six months. *Cf. Ellicott Mach.,* 995 F.2d at 478 (affirming the denial of jurisdiction, noting that the parties had agreed to a one-time relationship to last only four months). More telling, the subcontract states that it is "to be governed by the laws of the State of North Carolina." (Def.'s Mem. at Ex. 1, Bowness Aff., at Ex. A, at 1.) "[A] choice of law provision which opts away from the forum state, when combined with other factors disfavoring the exercise of personal jurisdiction, raises the negative implication that personal ju-

---

2. Bowness disputes these facts, alleging that 60 to 75 percent of Johansson's work on the project was performed at the job site in North Carolina. (Def.'s Mem. at Ex. 1, Bowness Aff., at ¶ 20–21, 23.) In the posture of this motion to dismiss, however, the court must resolve all factual disputes and make all reasonable inferences in favor of Johansson. *See Carefirst,* 334 F.3d at 396.

risdiction in the forum state was not contemplated." *Mun. Mortgage Equity*, 93 F.Supp.2d at 629 n. 6 (declining to exercise jurisdiction, based in part on a choice of law provision specifying another jurisdiction); *see also Ellicott Mach.*, 995 F.2d at 478 (affirming denial of jurisdiction, based in part on the lack on a choice of law provision and references in the parties' contract to controlling law in another jurisdiction).[3]

Johansson cannot cite a single case in which a similar constellation of facts has been found to constitute minimum contacts with the forum state. The only decision cited by the plaintiff in which a court exercised personal jurisdiction over a nonresident defendant based on a contractual relationship involved additional factors supporting jurisdiction that are not present in the instant case. *See English & Smith v. Metzger*, 901 F.2d 36, 39–40 (4th Cir.1990) (affirming exercise of jurisdiction, where the out-of-state defendant initiated the business relationship, the contemplated performance occurred in the forum, and the parties exchanged numerous phone calls and correspondence and collaborated on two other projects). The circumstances of the instant case more closely parallel the facts in *Joseph M. Coleman & Assoc.*, 887 F.Supp. at 117–18, in which the plaintiff, a Maryland corporation, performed ongoing consulting services for the defendant, a Pennsylvania corporation. As in the instant case, the majority of the work under the contract was to be per-

formed in Maryland and the defendant sent correspondence and payments to Maryland, but the plaintiff had initiated the relationship, the contract involved third parties in other states, Maryland law would not govern the contract, the defendant had no physical presence in Maryland, and the plaintiff had traveled to the defendant's state to perform some of its contractual work. *See id.* at 119–20. Based on these facts, the court suggested that the exercise of personal jurisdiction in Maryland would be unconstitutional. *See id.* at 120.

Given the entire factual context surrounding the subcontract, the court cannot conclude that the agreement had a "substantial connection" to Maryland, such that "the defendant purposefully established minimum contacts within the forum." *Burger King*, 471 U.S. at 474, 475, 105 S.Ct. 2174. In defining when interstate contractual obligations should give rise to personal jurisdiction, the Supreme Court has stated that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473, 105 S.Ct. 2174 (internal quotation omitted). In the instant case, a North Carolina corporation that has never reached out beyond the state of North Carolina reluctantly was drawn into a one-time, short-term relationship with a Maryland corporation, on a North Car-

---

**3.** The choice of North Carolina law appears to be particularly significant in this case, because the draft contract presented by Johansson contained a choice of law provision specifying that Maryland law would govern. (Def.'s Mem. at Ex. 1, Bowness Aff., at Ex. A, at 12.) In a case involving parallel circumstances in which Maryland law had been specified in the draft contract, the district court found that the designation of Minnesota law in the parties' final contract created a

negative implication against the exercise of jurisdiction. *See Mun. Mortgage Equity*, 93 F.Supp.2d at 629 ("[T]he selection by the parties, and [the defendant] in particular, of Minnesota law over Maryland law, when the choice of Maryland law was clearly an available option, weighs heavily in favor of the conclusion that [the defendant] did not intend to avail itself of the benefits and protections of Maryland law.").

olina project being constructed for a North Carolina client, in a subcontract largely negotiated in North Carolina which provided that North Carolina law would govern any resulting legal disputes. Bowness has not "purposefully availed itself of the privilege of conducting activities in the state," *Carefirst,* 334 F.3d at 397, and should not have "reasonably anticipate[d] being haled into court" in Maryland, *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559. Johansson has failed to make a prima facie showing of personal jurisdiction, and ordinarily this court would be required to grant Bowness's motion to dismiss for lack of personal jurisdiction.

■ The plaintiff has requested that the court exercise its discretion to transfer this case to the United States District Court for the Middle District of North Carolina, rather than dismiss it entirely. Under 28 U.S.C. § 1406(a), if a plaintiff files suit in the wrong venue, then the district "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "[T]he Fourth Circuit has adopted a reading of section 1406(a) authorizing transfer 'for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district.'" *Estate of Bank,* 286 F.Supp.2d at 522 (quoting *Porter v. Groat,* 840 F.2d 255, 258 (4th Cir.1988)). This includes a transfer based on lack of personal jurisdiction over the defendant to another district where the defendant is subject to personal jurisdiction. *See id.; see also Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 465–66, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). The decision to transfer a case under § 1406(a) should be

based on an individualized inquiry into "private factors such as the convenience of obtaining witness testimony and physical evidence, as well as public factors such as the forum's public policy interest in hearing the case." *Gov't of Egypt Procurement Office v. M/W Robert E. Lee,* 216 F.Supp.2d 468, 473 (D.Md.2002) (internal quotation marks omitted).

■ The court concludes that it is in the interest of justice to transfer this case to the Middle District of North Carolina, rather than dismissing the case for lack of personal jurisdiction and requiring the plaintiff to re-file in that district. Bowness is subject to personal jurisdiction in the Middle District of North Carolina, where its principal place of business is located and where the subcontract between the parties was entered. The majority of potential witnesses in this case-including current employees of Bowness, as well as the Granthams-are located in the Middle District of North Carolina. Disputed physical evidence—the cabinetry and paneling in the Granthams' completed custom home—also is located in the Middle District of North Carolina. Although some employees of Johansson may have to travel to North Carolina if the case is transferred, this should not be a great burden, given the company's recent work in North Carolina pursuant to the disputed subcontract. Finally, although the state of Maryland "generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174 (internal quotation omitted), that interest is lessened in this case because the court would be required to apply North Carolina law.[4]

A separate order follows.

---

4. The forum state's conflict of law rules determine what substantive law to apply to state law claims in federal court. *See Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (per curiam). The Maryland courts generally honor choice-of-law contractual provisions, *see Nat'l Glass, Inc. v. J.C. Penney Props., Inc.,* 336 Md. 606,

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the defendant's Motion to Dismiss Complaint for Lack of Personal Jurisdiction (docket no. 8) is **DENIED**;

2. this case shall be **TRANSFERRED** to the United States District Court for the Middle District of North Carolina;

3. copies of this Order and the accompanying Memorandum shall be **SENT** to counsel of record; and

4. the clerk of the court shall **CLOSE** this case.

650 A.2d 246, 248 (1994), and neither party has raised any argument against enforcement