**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1045**

SUBODH PANDIT,

Plaintiff – Appellant,

v.

SUDHIR PANDIT; DOROTHY PANDIT; CATHALINE R. SAMUEL;
MESHACH V. SAMUEL,

Defendants – Appellees.

Appeal from the United States District Court for District of Maryland, at Greenbelt. Paula Xinis, District Judge. (8:18-cv-01136-PX)

Submitted: February 20, 2020                    Decided: April 9, 2020

Before AGEE, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Brian M. Maul, LAW OFFICE OF BRIAN M. MAUL, LLC, Frederick, Maryland, for Appellant. Kelly Burchell, BURCHELL & HUGHES PLLC, Washington, D.C.; Steven E. Leder, LEDER LAW GROUP, PC, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Subodh Pandit ("Appellant") appeals the district court's dismissal of his Complaint against Dorothy and Sudhir Pandit (the "Pandit Defendants") and Cathaline and Meshach Samuel (the "Samuel Defendants"; collectively, the "Arkansas Defendants") for lack of personal jurisdiction. For the reasons discussed below, we affirm the judgment of the district court.

I.

Appellant is a citizen and resident of Maryland, where he leads a full-time religious ministry. The Arkansas Defendants are Appellant's relatives by either blood or marriage and are citizens and residents of Arkansas. This case stems from Appellant's allegation that, for several years, the Arkansas Defendants have engaged in a campaign to smear his reputation. In response, he filed the operative Complaint in the U.S. District Court for the District of Maryland alleging various state law tort claims.

Relevant to the matter of personal jurisdiction, which is the sole issue on appeal, Appellant claimed in his Complaint that the Arkansas Defendants had the following contacts with Maryland: (1) on August 31, 2015, the Samuel Defendants "drafted and sent [him] a letter, threatening to disseminate . . . defamatory material[s] to 'all the organizations (both in the USA and elsewhere) with which [his] ministry is involved,'" J.A. 9 ¶ 18; (2) on July 25, 2017, the Samuel Defendants sent a letter to Appellant's Associate Pastor in Maryland, accusing Appellant of committing adultery; and (3) on February 20, 2018, the Pandit Defendants "drafted and sent an email" attacking Appellant's personal character

2

and professional credentials "to numerous recipients in [his] religious community and/or professional/business community, including at least four recipients who reside in Maryland and who those Defendants knew and/or should have known reside in Maryland," J.A. 6 ¶ 11.

All of the Arkansas Defendants moved to dismiss for lack of personal jurisdiction.[1] In support of their motion, the Samuel Defendants attached affidavits[2] detailing the extent of their contacts (or lack thereof) with Maryland. They averred that: (1) neither has "lived in the State of Maryland, nor [have they] own[ed], use[d], or ha[d] an interest in real property in Maryland," J.A. 42 ¶ 2, 45 ¶ 2; (2) neither has "travel[ed] to Maryland, communicate[d] with Maryland residents, offer[ed] services to Maryland residents, or purchase[d] items from Maryland" in their professional capacity, J.A. 42 ¶ 3, 45 ¶ 3; (3) their work does "not bring [them] in contact with any Maryland person or entity," J.A. 42 ¶ 3, 45 ¶ 3; (4) neither has ever "worked in Maryland, and [they] have never worked for a Maryland organization," J.A. 43 ¶ 5, 46 ¶ 5; and (5) all of the communications alleged in the Complaint "were performed in Arkansas. Specifically, any letters mailed were written in Arkansas and mailed from Arkansas to the addressee. Any emails sent were typed in

---

[1] The Arkansas Defendants also moved to dismiss for failure to state a claim. The district court denied those motions as moot after concluding that it lacked personal jurisdiction. In his Opening Brief, Appellant asks this Court to rule on these motions as well. Because we conclude that Appellant has not made a *prima facie* showing of personal jurisdiction, we need not reach this issue.

[2] *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993) (explaining that courts may consider affidavits from any party when applying the *prima facie* standard to a motion to dismiss for lack of personal jurisdiction).

Arkansas and transmitted by a computer in Arkansas to the recipient email address," J.A. 43 ¶ 6, 46 ¶ 6. The Pandit Defendants did not file an affidavit in support of their motion to dismiss.

In response, Appellant filed affidavits outlining additional contacts between the Arkansas Defendants and Maryland. He alleged that Dorothy Pandit lived in Maryland from 1977 to 1985 and visited the State five times between October 2004 and June 2018 for various family and church-related events. Appellant asserted that Sudhir Pandit similarly lived in Maryland from 1977 to 1985 and visited Maryland on five occasions between August 2014 and June 2018 for family and church-related events. Appellant also accused Sudhir Pandit of sending eleven emails (of unspecified content) over a sixteen-month period either addressed to or copying Maryland residents.

As for Cathaline Samuel, Appellant asserted that she visited Maryland four times between October 2004 and September 2015 for family and church-related events. Appellant further alleged that Meshach Samuel visited Maryland seven times between October 2004 and Fall 2015, again for various family and church-related events. Appellant concluded that "[a]ll Defendants know/knew that [he] reside[s] in Maryland, that [his] religious ministry is based in Maryland, and that [his] colleagues are primarily located in Maryland, which is where Defendants[] targeted their defamatory statements toward [him] (*i.e.*, into Maryland)." J.A. 69. In the event the court deemed those additional contacts to be insufficient, Appellant requested jurisdictional discovery as an alternative to dismissal.

The district court began its analysis by considering Appellant's specific-jurisdiction arguments under Maryland's long-arm statute. The court first turned to Md. Code, Cts. &

Jud. Proc. § 6-103(b)(3) in response to Appellant's assertion that the Arkansas Defendants "[c]ause[d] tortious injury in the State by an act or omission in the State." Rejecting that argument, the court held that in order for that section of the long-arm statute to apply, both the tortious injury and activity must occur in Maryland. Because the alleged defamatory emails and letters were sent from Arkansas, the court concluded that the "tortious act" occurred in Arkansas. As a result, the court held it could not exercise jurisdiction under that provision. *Pandit v. Pandit*, No. 8:18-cv-01136-PX, 2018 WL 5026373, at *2 (Oct. 17, 2018).

The district court then addressed Appellant's argument that the Arkansas Defendants' alleged conduct fell under Md. Code, Cts. & Jud. Proc. § 6-103(b)(4) because they injured him through tortious activity that occurred outside of Maryland and they engaged in a "persistent course of conduct" within the State. As a threshold matter, the court observed that sending a handful of emails and letters to individuals in Maryland amounted to no more than isolated and sporadic association with the forum and thus did not constitute a "persistent course of conduct." And even when considering the Arkansas Defendants' infrequent visits to and communications with people in Maryland, the court found them to be insufficient to satisfy the provision. *Pandit*, 2018 WL 5026373, at *3.

Having determined that it could not exercise specific jurisdiction over the Arkansas Defendants because Appellant failed to allege conduct that fell under Maryland's long-arm statute, the court turned its attention to general jurisdiction. Since none of the Arkansas Defendants resided in Maryland at the time the Complaint was filed and none could be said to harbor any "intent to remain" there, the court concluded it lacked general jurisdiction as

5

well. *Id.* at \*3–4.

Finally, the court rejected Appellant's alternative request for jurisdictional discovery because he provided no reason to suggest it would unearth relevant facts sufficient to confer personal jurisdiction over the Arkansas Defendants. *Id.* at \*4. And because the court could discern no federal court to which transfer would be proper, it dismissed Appellant's Complaint without prejudice,[3] *id.*, and directed the Clerk to "close this case," J.A. 192.

Appellant filed a timely notice of appeal. Because amendment would be futile, this Court has jurisdiction under 28 U.S.C. § 1291. *See Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F. 3d 619, 623 (4th Cir. 2015) ("An order dismissing a complaint without prejudice is not an appealable final order under § 1291 'if the plaintiff could save his action by merely amending his complaint.'"); *Shelton v. Crookshank*, 742 F. App'x 782, 783 n.\* (4th Cir. 2018) (per curiam) (observing that a "dismissal without prejudice for lack of personal jurisdiction is final and appealable [for purposes of § 1291 and *Goode* when the

---

[3] In his notice of appeal, Appellant erroneously states that the district court dismissed his Complaint with prejudice. That said, the district court was correct in dismissing the case without prejudice based on its conclusion that it lacked jurisdiction over the Arkansas Defendants because such a dismissal does not dismiss the case on the merits. *See, e.g.*, *CP # 1109, LLC v. Cont'l Motors Servs., Inc.*, 741 F. App'x 946, 947 (4th Cir. 2018) (per curiam) (modifying the district court's dismissal for lack of personal jurisdiction to be without prejudice); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (explaining that when a court "lacks jurisdiction [it] has no power to adjudicate and dispose of a claim on the merits"); *see also Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005) ("[U]pon a determination that personal jurisdiction is lacking, a court should not dismiss a case on the merits[.]").

6

plaintiff] could not correct the jurisdictional defects in [the] complaint simply by providing additional factual detail").

II.

A.

We review de novo a district court's determination that it lacks personal jurisdiction over a defendant and review for clear error any underlying factual findings. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 443 (4th Cir. 2015). When the district court decides a personal-jurisdiction motion based on initial court filings without conducting an evidentiary hearing, "a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

We review orders denying requests for jurisdictional discovery for abuse of discretion. *Id.* Jurisdictional discovery is proper when the plaintiff has alleged sufficient facts to suggest the possible existence of personal jurisdiction. *Id.* at 402–03. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Id.* at 402.

B.

Appellant presents two arguments on appeal: (1) the district court erred in

7

dismissing his Complaint because he made a *prima facie* showing of personal jurisdiction over the Arkansas Defendants; and (2) the district court abused its discretion by denying his request for jurisdictional discovery. We address each contention in turn.

1.

A court may exercise two types of personal jurisdiction, general or specific. "General personal jurisdiction requires 'continuous and systemic' contacts with the forum state." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). The Supreme Court has made clear that courts may only exercise general jurisdiction where the defendant's contacts "are so 'continuous and systematic' as to render [it] essentially at home" there. *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). This is a stringent standard, which is appropriate because "[a] court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017).

"Specific jurisdiction is very different," *id.*, and exists only when "[t]he contacts related to the cause of action . . . create a 'substantial connection' with the forum state," *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). "For a court to have specific personal jurisdiction over a defendant, the defendant must have 'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" *Perdue Foods*, 814 F.3d at 189 (quoting *Burger King Corp. v. Rudzewicz*,

8

471 U.S. 462, 474 (1985)). In other words, the plaintiff must show that the defendant "'purposefully directed' his activities at residents of the forum," *Burger King*, 471 U.S. at 472 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)), and that the plaintiff's cause of action "'arise[s] out of or relate[s] to'" those activities, *id.* (quoting *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414).

Appellant asserts that jurisdiction is proper under both theories. We address general jurisdiction first before turning to specific jurisdiction.

a.

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction[.]" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Fittingly, the Supreme Court has held that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)); *see also Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (defining "domicile" as "physical presence in a place in connection with a certain state of mind concerning one's intent to remain there").

Maryland undoubtedly is not that forum for the Arkansas Defendants. Nevertheless, Appellant argues that general jurisdiction is proper because Maryland is the Arkansas Defendants' "home away from home." Reply Br. 10. By taking that position, however, Appellant concedes what his Complaint make clear: Arkansas is, in fact, the Arkansas Defendants' domicile and home. As a result, we affirm the district court's holding that it could not exercise general jurisdiction over them.

b.

9

Appellant's specific-jurisdiction argument fares no better. "When a federal court sits in diversity, it 'has [specific] personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process.'" *Perdue Foods*, 814 F.3d at 188 (quoting *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)); *accord Carefirst*, 334 F.3d at 396. "With regard to the first requirement, we must accept as binding the interpretation of Maryland's long-arm statute rendered by the Maryland Court of Appeals." *Carefirst*, 334 F.3d at 396.[4]

"Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Id.* at 396. But that does not mean it is "permissible to simply dispense with analysis under the long-arm statute"; the long-arm statute is only interpreted "to the limits

---

[4] "It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications." *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998). That said, "when this inquiry proves unenlightening," the "federal court [should] seek guidance from an intermediate state court." *Id.* "When seeking such guidance we defer to a decision of the state's intermediate appellate court to a lesser degree than we do to a decision of the state's highest court. Nevertheless, we do defer." *Id.* Under those conditions, the Supreme Court has instructed that "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940). "Thus, a federal court must 'present' persuasive data when it chooses to ignore a decision of a state intermediate appellate court that is directly on point." *Assicurazioni*, 160 F.3d at 1002 (quoting *United States v. Little*, 52 F.3d 495, 498 (4th Cir. 1995)). Because no such persuasive data indicates tension between Maryland's two appellate courts, we will rely on decisions of both in understanding the state's long-arm statute.

permitted by the Due Process Clause when" such an interpretation is "consistent[] with the canons of statutory construction." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006); *see also Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118 n.2 (D. Md. 1995) (holding that "a more correct understanding of the first" step of the specific jurisdiction analysis "is that to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause"). Indeed, the Maryland Court of Appeals has acknowledged that there may be cases in which the facts "will be deemed outside the scope of the Maryland 'long arm' statute, although there may be a constitutional basis for jurisdiction over the nonresident defendant." *Krashes v. White*, 341 A.2d 798, 804 (Md. 1975); *see also CSR, Ltd. v. Taylor*, 983 A.2d 492, 502 (Md. 2009) (recognizing "that the statutory and constitutional components of our jurisdictional inquiry are not mutually exclusive").

Accordingly, this Court's specific-jurisdiction analysis must begin with Maryland's long-arm statute. And in this appeal, the Court's analysis ends there as well because Appellant has waived any argument on that point by failing to address it in his Opening Brief. *See Carter v. Lee*, 283 F.3d 240, 252 n.11 (4th Cir. 2002) ("[T]his Court normally views contentions not raised in an opening brief to be waived."). He presents no substantive argument on this issue whatsoever. Indeed, none of the cases he cites when discussing the long-arm statute in the body of his brief analyze or address the interpretation of its provisions. *See* Opening Br. 26–27. Instead, Appellant's Opening Brief relegates his entire analysis of the long-arm statute to a single footnote and a lone declarative statement citing

11

irrelevant cases. *See* Opening Br. 26–27, 30 n.9. As our past decisions make clear, that is not enough. *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009) (holding that an issue raised in a footnote and addressed with only declarative sentences is waived); *see also Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 n.8 (4th Cir. 2015) (same for footnotes with argument). Because Appellant has waived any argument that the Arkansas Defendants' conduct falls under Maryland's long-arm statute, we affirm the district court's holding that it could not exercise specific jurisdiction over them.

Even if we were to consider the substance of Appellant's specific-jurisdiction claim, the result would be the same. Maryland's long-arm statute provides several avenues to confer specific personal jurisdiction on an out-of-state defendant, only two of which are potentially relevant here: (1) where a defendant "[c]auses tortious injury in the State by an act or omission in the State," Md. Code, Cts. & Jud. Proc. § 6-103(b)(3); and (2) where a defendant "[c]auses tortious injury in the State or outside of the State by an act or omission outside the State if he . . . engages in any other persistent course of conduct in the State," *id.* § 6-103(b)(4).

Maryland courts have consistently held that in order to satisfy § 6-103(b)(3), both the injury itself and the act giving rise to the injury must have occurred and originated within Maryland. *See Zinz v. Evans & Mitchell Indus.*, 324 A.2d 140, 144 (Md. Ct. Spec. App. 1974); *see also Geelhoed v. Jensen*, 352 A.2d 818, 223 n.3 (Md. 1976) (observing that § 6-103(b)(3) "distinguish[es] between the tortious act and injury, and in a sense [is] therefore more restrictive than long arm statutes" that "provide[] jurisdiction as to any cause of action arising from the 'commission of a tortious act within this State'").

Since *Zinz* was decided, this Court and others have cited it with approval when analyzing Maryland's long-arm statute, and there is no indication that the Maryland Court of Appeals would find otherwise. *See, e.g.*, *Lewin v. Columbia Univ.*, 822 F.2d 55 (4th Cir. 1987) (per curiam) (applying *Zinz* to letters); *Aphena Pharma Sols.–Md. LLC v. Biozone Labs., Inc.*, 912 F. Supp. 2d 309, 316–17 (D. Md. 2012) (emails and phone calls); *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 (D. Md. 2006) (emails); *Craig v. Gen. Fin. Corp. of Ill.*, 504 F. Supp. 1033, 1036–37 (D. Md. 1980) (letters and phone calls; "Simply because no cause of action arises under the statute involved here until the employer receives the communication, does not mean that the causal act occurred in Maryland." (internal citation omitted)); *Bond v. Messerman*, 873 A.2d 417, 427 (Md. Ct. Spec. App. 2005), *aff'd* 895 A.2d 990 (Md. 2006). Applying *Zinz*, we conclude that Appellant has not made a *prima facie* showing that the Arkansas Defendants' conduct falls under the scope of § 6-103(b)(3) because he has not alleged that they wrote or sent the purportedly defamatory emails and letters while they were in Maryland.

Any argument that the Arkansas Defendants' actions qualify as a "persistent course of conduct" under § 6-103(b)(4) is even less compelling. Maryland's state courts have not clearly defined that term. *See Geelhoed*, 352 A.2d at 822 (observing that the term had a "relatively flexible quality"). Nevertheless, a plain reading of "persistent course of conduct" demonstrates that it encompasses conduct that has either: (1) "go[ne] on resolutely or stubbornly despite  opposition"; (2) "remain[ed] unchanged or fixed in a specified character, condition, or position"; or (3) continue[d] to exist or endure (as beyond a normal period or after the removal of a cause) . . . [or] recur[red] constantly." *Persist*,

13

Merriam-Webster's Third New Int'l Dictionary (1961); *see also Persistent*, Merriam-Webster's Third New Int'l Dictionary (1961) ("continuing in a course of action without regard to opposition or previous failure : tenacious of position or purpose" or "existing for a long or longer than usual time or continuously"). In other words, the contacts resulting from the conduct must be continuous over a long period of time.

As the district court correctly observed, the isolated emails and letters the Arkansas Defendants are alleged to have sent to Maryland residents do not meet this threshold. *See Tharp v. Colao*, No. WDQ-11-3202, 2012 WL 1999484, at \*2 (D. Md. June 1, 2012) ("Maryland courts have refused to exercise jurisdiction under this provision even when defendants have engaged in extensive electronic communications with someone in Maryland[.]"). Similarly, the Arkansas Defendants' infrequent and sporadic visits to Maryland for various family engagements and church events over a fourteen-year period are insufficient to satisfy § 6-103(b)(4). *Compare with Bass v. Energy Transp. Corp.*, 787 F. Supp. 530, 535 (D. Md. 1992) (finding personal jurisdiction where a company visited Maryland three to four times a year, in addition to extensive hiring and training of Marylanders through a collective bargaining agreement with a Maryland-based union); *see also Sibert v. Flint*, 564 F. Supp. 1524, 1529 (D. Md. 1983) (holding that visits for personal reasons may subject a defendant to jurisdiction only if they were "very frequent"). Simply put, Appellant has not carried his burden of showing that the Arkansas Defendants' conduct falls under § 6-013(b)(4) either.

Therefore, even if we found that Appellant had not waived his argument that the Arkansas Defendants' conduct falls under Maryland's long-arm statute, we would still

14

affirm the district court's holding that it could not exercise specific jurisdiction over them.

## 2.

Finally, turning to Appellant's argument that he was entitled to jurisdictional discovery, we have recognized that "district courts 'have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them].'" *Carefirst*, 334 F.3d at 402 (quoting *Mylan Labs.*, 2 F.3d at 64). In light of the above analysis, we find that Appellant has not established that discovery would produce any relevant evidence. Indeed, he has alleged no facts suggesting the possible existence of personal jurisdiction over any of the Arkansas Defendants. *See id.* at 402–03. As a result, we conclude that the district court did not abuse its discretion.

## III.

Accordingly, we affirm the district court's dismissal for lack of personal jurisdiction and its denial of Appellant's request for jurisdictional discovery. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid in the decisional process.

*AFFIRMED*